UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| **Intercurrency Software LLC,**<br><br>**Plaintiff,**<br><br>v.<br><br>**Charles Schwab & Co., Inc. and Charles Schwab Futures and Forex LLC,**<br><br>**Defendants.** | **Case No. 2:23-cv-0128**<br><br>**Jury Trial Demanded** |

## ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT

Intercurrency Software LLC ("Intercurrency" or "Plaintiff") hereby files this Original Complaint for Patent Infringement against Charles Schwab & Co., Inc. and Charles Schwab Futures and Forex LLC ("Charles Schwab" or "Defendant"), and alleges, upon information and belief, as follows:

## THE PARTIES

1.      Intercurrency Software LLC is a limited liability company organized and existing under the laws of the State of Texas with its principal place of business at 3333 Preston Road, Suite 300, Frisco, Texas 75034.

2.      Defendant Charles Schwab & Co., Inc. is a corporation organized and existing under the laws of the State of California with a place of business in this District located at 3310 Dallas Parkway, Suite 111, Plano, Texas 75093.  Defendant may be served through its registered agent, C T Corporation, located at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

3.     Defendant Charles Schwab Futures and Forex LLC is a corporation organized and existing under the laws of the State of Delaware with a place of business in this District located at 3310 Dallas Parkway, Suite 111, Plano, Texas 75093.  Defendant may be served through its registered agent, C T Corporation, located at 1999 Bryan Street, Suite 900, Dallas, Texas 75201.

## JURISDICTION AND VENUE

4.     This Court has subject matter jurisdiction over this case under 28 U.S.C. §§ 1331 and 1338.

5.     This Court has personal jurisdiction over Defendant.  Defendant has continuous and systematic business contacts with the State of Texas.  Defendant transacts business within this District and elsewhere in the State of Texas. Further, this Court has personal jurisdiction over Defendant based on its commission of one or more acts of infringement of the patents at issue in this District and elsewhere in the State of Texas.

6.     Defendant directly conducts business extensively throughout the State of Texas, by distributing, making, using, offering for sale, selling, and advertising its products and services in the State of Texas and in this District.  Defendant has purposefully and voluntarily made its business services, including the infringing systems and services, available to residents of this District and into the stream of commerce with the intention and expectation that they will be purchased and/or used by consumers in this District.

7.     Defendant maintains physical brick-and-mortar business locations in the State of Texas and within this District, retains employees specifically in this District for the purpose of servicing customers in this District, and generates substantial revenues from its business activities in this District.

8.     Venue is proper in this District as to Defendant pursuant to at least 28 U.S.C. §§ 1391(c)(2) and 1400(b).   As noted above, Defendant maintains a regular and established business presence in this District.

**PATENTS-IN-SUIT**

9.     Plaintiff is the sole and exclusive owner, by assignment, of U.S. Patent 10,062,107 (the "'107 Patent"), U.S. Patent 10,776,863 (the "'863 Patent"), and U.S. Patent 11,449,930 (the "'930 Patent") (hereinafter collectively referred to as the "Patents-in-Suit").

10.    By written instruments duly filed with the United States Patent and Trademark Office, Plaintiff is assigned all rights, title, and interest in the Patents-in-Suit.  As such, Plaintiff has sole and exclusive standing to assert the Patents-in-Suit and to bring these causes of action.

11.    The Patents-in-Suit are valid, enforceable, and were duly issued in full compliance with Title 35 of the United States Code.

12.    The Patents-in-Suit have been cited patents issued to well-known industry leaders, including industry giant Bank of America.

13.    The Patents-in-Suit each include numerous claims defining distinct inventions.  No single claim is representative of any other.

14.    The priority date of each of the Patents-in-Suit is at least as early as April 18, 2007. As of the priority date, the inventions as claimed were novel, non-obvious, unconventional, and non-routine.  Indeed, the Patents-in-Suit overcame a number of specific technological problems in the industry and provided specific technological solutions.

15.    By way of example, as of the date of invention, the prior art of financial service providers which allowed foreign investors to trade U.S. securities required the trades to be done in U.S. currency, which required the use of foreign currency exchange brokers before and after

trading to realize profits. This did not allow foreign investors to have "certain knowledge of what profit or loss he was going to get because the currency exchange rate must be obtained for a bulk amount at another time, which may fluctuate significantly enough to affect the ultimate profit or loss." *See* '107 Patent, Col. 1, ll. 38-60.

16.    The prior art did not perform the "the currency conversion [sic] at a transactional level … so that a trader or investor knows exactly what profit or loss may occur with a transaction." The prior art did not "show prices as well as conduct all transactions in a currency preferred by an investor, regardless of whatever currency being used in the primary market for the security/asset." *Id.*, Col.1, ll. 61-7 and Col. 2, ll. 1-3.

17.    Therefore, "the invention relates to methods, processes and systems for conducting security transactions in a preferred currency, regardless of what original or market currency the securities are being traded in and where the transaction may take place." *Id.*, Col. 2, ll. 15-9.

18.    Further, as an embodiment of the inventions, the inventions provide "a three-tier architecture [sic] which includes a brokerage, a market exchange where securities/assets are traded, and a currency exchange where amounts in one currency can be converted to corresponding amounts in another currency at prevailing rates," which "presents all prices, market data, P&L estimates, and transaction results or settlements in a preferred currency, in conjunction with the market exchange and the currency exchange *Id*., Col. 2, ll. 24-33.

19.    Thus, "a trader always knows exactly what he/she may end up with a transaction of an asset. Furthermore, according to another aspect of the present invention, when the transaction of the asset is performed, the consolidated trading platform can also perform a currency conversion automatically based on specified conditions." *Id*., Col. 2, ll. 33-8.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                    4

20.     The inventions of the Patents-in-Suit also contemplate that "orders with conditions (*e.g.*, a limit order, or a stop order) are only executed when the conditions are met with reference to the market price from the market exchange together with the currency exchange rate from the currency exchange." *Id.*, Col. 2, ll. 45-9.

21.     Moreover, any arguments relating to eligibility as may be made by Defendant here are necessarily merely cumulative with those already considered, and rejected, by the Patent Examiners in allowing the Patents-in-Suit.   *See, e.g., Technology Licensing Corp. v. Videotek, Inc.,* 545 F.3d 1316, 1337 (Fed. Cir. 2008); *Stone Basket Innov. v. Cook Medical,* 892 F.3d 1175, 1179 (Fed. Cir. 2018).

22.     The claims of the Patents-in-Suit are not drawn to laws of nature, natural phenomena, or abstract ideas.  Although the systems and methods claimed in the Asserted Patents are ubiquitous now (and, as a result, are widely infringed), the specific combinations of elements, as recited in the claims, were not conventional or routine at the time of the invention.

23.     Further, the claims of the Patents-in-Suit contain inventive concepts.  Even if a court ruled the underlying aspects to be abstract, the inventive concepts disclosed in sufficient detail would transform the claims into patent-eligible subject matter.

24.     Patent Examiners investigated fields of art exactly relevant to the patented inventions, such as G06Q40/00 and G06Q40/04.

25.     Specifically, the examiner investigated G06Q40/00, which covers subject matter drawn to a computerized arrangement for planning the disposition or use of funds or securities, or extension of credit; data processing systems or processes specially adapted for financial applications, *e.g.* management of monetary assets in data processing systems or on-line

banking, electronic funds transfer (eft) systems, financial or exchange applications, e.g. trading stock, options, ordering of stock, index balancing investment, e.g. fund management, and portfolio management.

26.    Additionally, the examiner also performed searches in the field of G06Q40/04, which covers the trading or exchange of securities or commodities within an organized system; data processing systems or processes specially adapted for trading in the context of stock, FX exchanges, *e.g.* trading of stocks and currency exchange; Stock exchange applications, *e.g.* Trading stock, options, ordering of stock, general stock trading administration Foreign exchange, *e.g.* currency trading and currency exchange.

27.    The claims of the Patents-in-Suit are patent eligible under 35 U.S.C. § 101, 102, 103, and 112, as reflected by the fact that three different Patent Examiners all agreed and allowed the Patents-in-Suit over extensive prior art as disclosed and of record during the prosecution of the Patents-in-Suit.  *See Stone Basket Innov.,* 892 F.3d at 1179 ("when prior art is listed on the face of a patent, the examiner is presumed to have considered it") (citing *Shire LLC v. Amneal Pharm., LLC,* 802 F.3d 1301, 1307 (Fed. Cir. 2015)); *Exmark Mfg. v. Briggs & Stratton,* 879 F.3d 1332, 1342 (Fed. Cir. 2018).

28.    After giving full proper credit to the prior art and having conducted a thorough search for all relevant art and having fully considered the most relevant art known at the time, the United States Patent Examiners allowed all of the claims of the Patents-in-Suit to issue.  In so doing, it is presumed that Examiners used their knowledge of the art when examining the claims. *See K/S Himpp v. Hear-Wear Techs., LLC,* 751 F.3d 1362, 1369 (Fed. Cir. 2014).  It is further presumed that Patent Examiners had experience in the field of the invention, and that

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                            6

the Patent Examiners properly acted in accordance with a person of ordinary skill.  *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002).

29.    The claims of the '107 Patent are novel and non-obvious, including over all non-cited art that is merely cumulative with the referenced and cited prior art.  *See* 37 C.F.R. § 1.56(b) (information is material to patentability when it is not cumulative to information already of record in the application); *see also AbbVie Deutschland GmbH v. Janssen Biotech,* 759 F.3d 1285, 1304 (Fed. Cir. 2014); *In re DBC,* 545 F.3d 1373, 1382 (Fed. Cir. 2008).  Likewise, the claims of the '107 Patent are novel and non-obvious, including over all non-cited contemporaneous state of the art systems and methods, all of which would have been known to a person of ordinary skill in the art, and which were therefore presumptively also known and considered by the Examiners.  *See, e.g., St. Clair I.P. Consultants v. Canon, Inc.,* 2011 WL 66166 at *6 (Fed. Cir. 2011); *In re Sang Su Lee,* 277 F.3d 1338, 1345 (Fed. Cir. 2002); *In re Koninklijke Philips Patent Litigation,* 2020 WL 7392868 at *19 (N.D. Cal. 2020); *Standard Oil v. American Cyanamid,* 774 F.2d 448, 454 (Fed. Cir. 1985) (persons of ordinary skill are presumed to be aware of all pertinent prior art).

## THE ACCUSED INSTRUMENTALITIES

30.    Upon information and belief, Charles Schwab makes, sells, advertises, offers for sale, uses, or otherwise provides an apparatus and method for a consolidated trading platform covered by the Patents-in-Suit, including its Schwab Global Account platform and system, as represented below, including all augmentations to these platforms or descriptions of platforms. Collectively, all the foregoing is referred to herein as the "Accused instrumentalities."



*See* https://www.schwab.com/global-trading.

31.     Currency exchanges are completed on behalf of Charles Schwab & Co., Inc. by Charles Schwab Futures and Forex LLC. Charles Schwab & Co., Inc. sends the transaction to Charles Schwab Futures and Forex LLC for the foreign exchange transaction.

This material is intended for informational purposes only and should not be considered a personalized recommendation or investment advice. Investors should review investment strategies for their own particular situations before making any investment decisions.

Examples provided are for illustrative purposes only and not intended to be reflective of results you can expect to achieve. Past performance does not indicate or guarantee future success. Returns will vary and all investments involve risks, including loss of principal.

Margin trading increases your level of market risk. Your downside is not limited to the collateral value in your margin account. Schwab may liquidate your account, without contacting you, to meet a margin call. Schwab may increase its "house" maintenance margin requirements at any time and is not required to provide you with advance written notice. You are not entitled to an extension of time on a margin call.

Investing involves risks, including the loss of principal invested.

Forex trading involves leverage, carries a high level of risk, and is not suitable for all investors. Please read the NFA booklet Trading Forex: What Investors Need to Know ⧉ prior to trading forex products.

Forex accounts do not receive any protection or guarantee from the Securities Investor Protection Corporation (SIPC), nor do they receive a preference in any bankruptcy proceeding pursuant to Part 190 of the CFTC's regulations. **Forex trading services are provided by Charles Schwab Futures and Forex LLC. Trading privileges are subject to review and approval. Not all clients will qualify.** Forex accounts are not available to residents of Ohio or Arizona.

*See* https://www.schwab.com/learn/story/forex-margin#:~:text=Forex%20trading%20services%20are%20provided,Not%20all%20clients%20will%20qualify.

## COUNT I
### Infringement of U.S. Patent No. 10,062,107

32.    Plaintiff incorporates the above paragraphs by reference.

33.    Defendant has been on actual notice of the '107 Patent at least as early as the date it received service of the Original Complaint in this litigation.

34.    Plaintiff or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '107 patent, thus the damages period begins at least as early as six years prior to the date of service of the Original Complaint in this litigation.

35.    Defendant manufactures, sells, offers for sale, owns, directs, and/or controls the operation of the Accused Instrumentalities and generates substantial financial revenues and benefits therefrom.

36.    Defendant has directly infringed and continues to directly infringe the claims of the '107 Patent.  As exemplary, Claim 1 is infringed by making, using, importing, selling, and/or offering for sale the Accused Instrumentalities.  Defendant directly makes and sells the infringing Accused Instrumentalities at least because it is solely responsible for putting the infringing systems into service by directing or controlling the systems as a whole and by obtaining the benefits therefrom.  More specifically, and on information and belief, with respect to the Accused Instrumentalities, Defendant:

- (i) practices and provides a trading server, such as the Charles Schwab trading servers coupled to one or more currency exchange servers, such as Charles Schwab Futures and Forex LLC servers, and one or more market exchange servers;

- (ii) practices and provides receiving in the trading server an indicator of a preferred currency from a trader;

- (iii) practices and provides causing a client computer associated with the trader to display at least an asset in the preferred currency while the asset is being traded in a market currency, wherein said causing a client computer associated with the trader to display at least an asset in the preferred currency comprises;

- (iv) practices and provides conducting in the trading server a transaction of the asset by transmitting a transaction request from the trading server to a market exchange server when the trader decides to proceed with trading the asset;

- (v) practices and provides receiving a settlement notification in the trading server when the transaction of the asset is performed by the market exchange server in accordance with conditions set by the user, wherein the conditions include a price at which the asset is traded in the preferred currency, the trading server is configured to calculate the prevailing exchange rate from all exchange rates obtained from the one or more currency exchange servers right before the transaction takes place when the asset is not priced in the preferred currency, and executes the transaction with the calculated prevailing exchange rate obtained at the transaction to prevent uncertainty in currency exchanges in another time; and

- (vi) practices and provides performing a currency conversion of some portion or all of the transaction from the market currency to the preferred currency when the preferred currency is not identical to the market currency, the conversion being performed with the calculated prevailing exchange rate.

37.    Further on information and belief, Defendant directly uses the infringing Accused Instrumentalities at least because it assembled the combined infringing elements and makes them collectively available in the United States, including via its Internet domain web pages

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                      10

and/or software applications, as well as via its internal systems and interfaces. Further, and on information and belief, Defendant has directly infringed by using the infringing Accused Instrumentalities as part of its ongoing and regular testing and/or internal legal compliance activities. Such testing and/or legal compliance necessarily requires Defendant to make and use the Accused Instrumentalities in an infringing manner. Still further, Defendant is a direct infringer by virtue of its branding and marketing activities, which collectively comprise the sale and offering for sale of the infringing Accused Instrumentalities.

38.    As shown above, Defendant is making, using, and offering for sale the Accused Instrumentalities.

39.    Additionally, upon information and belief, Defendant owns, directs, and/or controls the infringing method operation of the Accused Instrumentalities.

40.    On information and belief, the infringement of the '107 Patent by Defendant will now be willful through the filing and service of this Complaint. The '107 Patent is not expected to expire before October 28, 2033.

41.    In addition or in the alternative, Defendant now has knowledge and continues these actions and it indirectly infringes by way of inducing direct infringement by others and/or contributing to the infringement by others of the '107 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing services for use in systems that fall within the scope of the claims of the '107 Patent. This includes without limitation, one or more of the Accused Instrumentalities by making, using, importing offering for sale, and/or selling such services, Defendant injured Plaintiff and is thus liable to Plaintiff for infringement of the '107 Patent under 35 U.S.C. § 271.

42.     Now with knowledge of the '107 Patent, Defendant induces infringement under Title 35 U.S.C. § 271(b).  Defendant will have performed actions that induced infringing acts that Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc*., 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co*., 471 F.3d 1293, 1306 (Fed.Cir.2006) (*en banc* in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co*., 501 F.3d 1307, 1313, (Fed. Cir. 2007).

43.     Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd*., 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

44.     Defendant has taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

45.     In addition, on information and belief, and based in part upon the clear infringement by the Accused Instrumentalities, Defendant has a practice of not performing a review of the patent

rights of others first for clearance or to assess infringement thereof prior to launching products and services.  As such, Defendant has been willfully blind to the patent rights of Plaintiff.

46.    The foregoing infringement on the part of Defendant has caused past and ongoing injury to Plaintiff.  The specific dollar amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '107 Patent.

47.    Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

## COUNT II
## Infringement of U.S. Patent No. 10,776,863

48.    Plaintiff incorporates the above paragraphs by reference.

49.    Defendant has been on actual notice of the '863 Patent at least as early as the date it received service of the Original Complaint in this litigation.

50.    Plaintiff or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '863 patent, thus the damages period begins at least as early as six years prior to the date of service of the Original Complaint in this litigation.

51.    Defendant manufactures, sells, offers for sale, owns, directs, and/or controls the operation of the Accused Instrumentalities and generates substantial financial revenues and benefits therefrom.

52.    Defendant has directly infringed and continues to directly infringe the claims of the '863 Patent.  As exemplary, Claim 1 is infringed by making, using, importing, selling, and/or offering for sale the Accused Instrumentalities.  Defendant directly makes and sells the

infringing Accused Instrumentalities at least because it is solely responsible for putting the infringing systems into service by directing or controlling the systems as a whole and by obtaining the benefits therefrom.  More specifically, and on information and belief, with respect to the Accused Instrumentalities, Defendant practices and provides a trading server, such as the Charles Schwab trading servers coupled to one or more currency exchange servers, such as Charles Schwab Futures and Forex LLC servers, and one or more market exchange servers.

53.     Further on information and belief, Defendant directly uses the infringing Accused Instrumentalities at least because it assembled the combined infringing elements and makes them collectively available in the United States, including via its Internet domain web pages and/or software applications, as well as via its internal systems and interfaces.  Further, and on information and belief, Defendant has directly infringed by using the infringing Accused Instrumentalities as part of its ongoing and regular testing and/or internal legal compliance activities.  Such testing and/or legal compliance necessarily requires Defendant to make and use the Accused Instrumentalities in an infringing manner.  Still further, Defendant is a direct infringer by virtue of its branding and marketing activities, which collectively comprise the sale and offering for sale of the infringing Accused Instrumentalities.

54.     As shown above, Defendant is making, using, and offering for sale the Accused Instrumentalities.

55.     Additionally, upon information and belief, Defendant owns, directs, and/or controls the infringing method operation of the Accused Instrumentalities.

ORIGINAL COMPLAINT FOR PATENT INFRINGEMENT                                    14

56.    On information and belief, the infringement of the '863 Patent by Defendant will now be willful through the filing and service of this Complaint. The '863 Patent does not expire before May 24, 2027.

57.    In addition or in the alternative, Defendant now has knowledge and continues these actions and it indirectly infringes by way of inducing direct infringement by others and/or contributing to the infringement by others of the '863 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing services for use in systems that fall within the scope of the claims of the '863 Patent. This includes without limitation, one or more of the Accused Instrumentalities by making, using, importing offering for sale, and/or selling such services, Defendant injured Plaintiff and is thus liable to Plaintiff for infringement of the '863 Patent under 35 U.S.C. § 271.

58.    Now with knowledge of the '863 Patent, Defendant induces infringement under Title 35 U.S.C. § 271(b).  Defendant will have performed actions that induced infringing acts that Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc*., 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co*., 471 F.3d 1293, 1306 (Fed.Cir.2006) (*en banc* in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co*., 501 F.3d 1307, 1313, (Fed. Cir. 2007).

59.    Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee

may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd*., 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

60.  Defendant has taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

61.  In addition, on information and belief, and based in part upon the clear infringement by the Accused Instrumentalities, Defendant has a practice of not performing a review of the patent rights of others first for clearance or to assess infringement thereof prior to launching products and services.  As such, Defendant has been willfully blind to the patent rights of Plaintiff.

62.  The foregoing infringement on the part of Defendant has caused past and ongoing injury to Plaintiff.  The specific dollar amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '863 Patent.

63.  Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

## COUNT III
## Infringement of U.S. Patent No. 11,449,930

64.  Plaintiff incorporates the above paragraphs by reference.

65.    Defendant has been on actual notice of the '930 Patent at least as early as the date it received service of the Original Complaint in this litigation.

66.    Plaintiff or its predecessors-in-interest have satisfied all statutory obligations required to collect pre-filing damages for the full period allowed by law for infringement of the '930 patent, thus the damages period begins at least as early as six years prior to the date of service of the Original Complaint in this litigation.

67.    Defendant manufactures, sells, offers for sale, owns, directs, and/or controls the operation of the Accused Instrumentalities and generates substantial financial revenues and benefits therefrom.

68.    Defendant has directly infringed and continues to directly infringe the claims of the '930 Patent.  As exemplary, Claim 12 is infringed by making, using, importing, selling, and/or offering for sale the Accused Instrumentalities.  Defendant directly makes and sells the infringing Accused Instrumentalities at least because it is solely responsible for putting the infringing systems into service by directing or controlling the systems as a whole and by obtaining the benefits therefrom.  More specifically, and on information and belief, with respect to the Accused Instrumentalities, Defendant provides a trading server, such as the Charles Schwab trading servers, coupled to one or more currency exchange servers, such as Charles Schwab Futures and Forex LLC servers, and one or more market exchange servers.

69.    Further on information and belief, Defendant directly uses the infringing Accused Instrumentalities at least because it assembled the combined infringing elements and makes them collectively available in the United States, including via its Internet domain web pages and/or software applications, as well as via its internal systems and interfaces.  Further, and on information and belief, Defendant has directly infringed by using the infringing Accused

Instrumentalities as part of its ongoing and regular testing and/or internal legal compliance activities.  Such testing and/or legal compliance necessarily requires Defendant to make and use the Accused Instrumentalities in an infringing manner.  Still further, Defendant is a direct infringer by virtue of its branding and marketing activities, which collectively comprise the sale and offering for sale of the infringing Accused Instrumentalities.

70.    As shown above, Defendant is making, using, and offering for sale the Accused Instrumentalities.

71.    Additionally, upon information and belief, Defendant owns, directs, and/or controls the infringing method operation of the Accused Instrumentalities.

72.    On information and belief, the infringement of the '930 Patent by Defendant will now be willful through the filing and service of this Complaint.  The '930 Patent does not expire before April 18, 2027.

73.    In addition or in the alternative, Defendant now has knowledge and continues these actions and it indirectly infringes by way of inducing direct infringement by others and/or contributing to the infringement by others of the '930 Patent in the State of Texas, in this judicial district, and elsewhere in the United States, by, among other things, making, using, importing, offering for sale, and/or selling, without license or authority, infringing services for use in systems that fall within the scope of the claims of the '930 Patent. This includes without limitation, one or more of the Accused Instrumentalities by making, using, importing offering for sale, and/or selling such services, Defendant injured Plaintiff and is thus liable to Plaintiff for infringement of the '863 Patent under 35 U.S.C. § 271.

74.    Now with knowledge of the '930 Patent, Defendant induces infringement under Title 35 U.S.C. § 271(b).  Defendant will have performed actions that induced infringing acts that

Defendant knew or should have known would induce actual infringements. *See Manville Sales Corp. v. Paramount Sys., Inc*., 917 F.2d 544, 553 (Fed.Cir.1990), quoted in *DSU Med. Corp. v. JMS Co*., 471 F.3d 1293, 1306 (Fed.Cir.2006) (*en banc* in relevant part). "[A] finding of inducement requires a threshold finding of direct infringement—either a finding of specific instances of direct infringement or a finding that the accused products necessarily infringe." *Ricoh,* 550 F.3d at 1341 (citing *ACCO Brands, Inc. v. ABA Locks Manufacturer Co*., 501 F.3d 1307, 1313, (Fed. Cir. 2007).

75.    Plaintiff will rely on direct and/or circumstantial evidence to prove the intent element. *See Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) ("A patentee may prove intent through circumstantial evidence."); *Water Techs. Corp. v. Calco, Ltd*., 850 F.2d 660, 668 (Fed. Cir. 1988) ("While proof of intent is necessary, direct evidence is not required; rather, circumstantial evidence may suffice.").

76.    Defendant has taken active steps to induce infringement, such as advertising an infringing use, which supports a finding of an intention for the accused product to be used in an infringing manner. *See Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd*., 545 U.S. 913, 932, 125 S. Ct. 2764, 162 L. Ed. 2d 781 (2005) (explaining that the contributory infringement doctrine "was devised to identify instances in which it may be presumed from distribution of an article in commerce that the distributor intended the article to be used to infringe another's patent, and so may justly be held liable for that infringement").

77.    In addition, on information and belief, and based in part upon the clear infringement by the Accused Instrumentalities, Defendant has a practice of not performing a review of the patent rights of others first for clearance or to assess infringement thereof prior to launching

products and services.  As such, Defendant has been willfully blind to the patent rights of Plaintiff.

78.   The foregoing infringement on the part of Defendant has caused past and ongoing injury to Plaintiff.   The specific dollar amount of damages adequate to compensate for the infringement shall be determined at trial but is in no event less than a reasonable royalty from the date of first infringement to the expiration of the '930 Patent.

79.   Each of Defendant's aforesaid activities have been without authority and/or license from Plaintiff.

## PRAYER FOR RELIEF

WHEREFORE, Intercurrency Software LLC respectfully requests the Court enter judgment against Defendant as follows:

1.   Declaring that Defendant has infringed the Patents-in-Suit;

2.   Awarding Plaintiff its damages suffered because of Defendant's infringement of the Patents-in-Suit;

3.   Enter a judgment awarding treble damages pursuant to 35 U.S.C. §284 for Defendant's willful infringement of the Patents-in-Suit;

4.   Awarding Plaintiff its costs, reasonable attorneys' fees, expenses, and interest; and

5.   Granting Plaintiff such further relief as the Court finds appropriate.

## JURY DEMAND

Plaintiff demands trial by jury, under Fed. R. Civ. P. 38.

Respectfully Submitted

*/s/* Christopher A. Honea
M. Scott Fuller
   Texas Bar No. 24036607
   sfuller@ghiplaw.com
Randall Garteiser
   Texas Bar No. 24038912
   rgarteiser@ghiplaw.com
Christopher A. Honea
   Texas Bar No. 24059967
   chonea@ghiplaw.com
René A. Vazquez
   Virginia Bar No. 41988
   rvazquez@ghiplaw.com

**GARTEISER HONEA, PLLC**
119 W. Ferguson Street
Tyler, Texas 75702
Telephone: (903) 705-7420
Facsimile: (903) 405-3999

**ATTORNEYS FOR PLAINTIFF
INTERCURRENCY SOFTWARE LLC**